UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ARTHUR GRICE,

        Plaintiff,                       Case No. 1:23-cv-938

v.                                         Honorable Ray Kent

UNKNOWN HAIRSTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lasata, Byrd, Page, Mackin, Herbert, and Bailey. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims relating to his conditions of confinement. Plaintiff's Eighth Amendment claims against Defendants Magro, Khaul, Rankin, Hairston, Bowman, Starkey, Warman, Williams, and O'Brien for the use of excessive force on August 30, 2022, remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains, however, occurred at the Berrien County Jail in Berrien County, Michigan. Plaintiff sues Deputies Unknown Hairston, Jonathan Bowman, Kendra Warman, Brittany Starkey, J. Williams, Unknown Khaul, and Mia Rankin. Plaintiff also sues Lieutenants Unknown O'Brien and Unknown Magro, Captain Unknown Herbert, Sheriff Unknown Bailey, Lawyers Kevin Mackin and Chris Page, Judge Charles Lasata, and Prosecutor Amy Byrd. Plaintiff states that he is suing Defendants in both their official and personal capacities.

Plaintiff alleges that on August 17, 2022, he was arrested, but cannot recall any events that occurred until September 2, 2022.[2] Plaintiff vaguely remembers asking for toilet tissue during that period of time so that he could wipe his rear end and recalls using his shirt to wipe. Plaintiff states that he was kept in receiving from August 17, 2022, until September 12, 2022, with only his boxers on, no mat, access to the shower, or toilet tissue. Plaintiff remembers thinking that his family was being killed and that the trustees were helping the police dispose of them. Plaintiff states that he does not know if he was drugged, hallucinating, or in withdrawal, but it lasted until September 12, 2022.

On September 12, 2022, Plaintiff was sent to "the hole" and on September 14, 2022, Plaintiff was arraigned on two counts of assault on a prison employee. Plaintiff states that he has no memory of the incident and pleaded not guilty. Plaintiff vaguely recalls getting tasered and

---

[2] Plaintiff's factual allegations are set forth on four handwritten pages. (Compl., ECF No. 1, PageID.5–8.) The facts are recounted here as Plaintiff presented them in the complaint.

maced but states that it feels like it was a dream. Plaintiff asked some deputies about the incident, and they stated that Plaintiff must have been going through something because he was acting in a manner unusual for him. The deputies indicated that they would testify to that fact. Plaintiff later learned that he had also been maced by Defendants Magro, Khaul, and Rankin while he was apparently hallucinating or in withdrawal.

On September 29, 2022, during the preliminary examination, Defendants Bowman, Starkey, and Warman lied about Plaintiff, stating that he had physically assaulted them. At that time, Plaintiff had not seen video of the incident. Plaintiff wrote to his lawyer, Mr. Page, asking for a speedy trial, but his lawyer did not respond. Plaintiff was later appointed Defendant Mackin and saw him for the first time in January of 2023. Defendant Mackin's concern was mainly the case that had resulted in Plaintiff being jailed. Defendant Mackin told Plaintiff that after that trial, they could prepare for the trial regarding Plaintiff's assault on a prison employee.

On February 28, 2023, Plaintiff saw video of the assault for the first time. The video showed Plaintiff alone in a room wearing only his boxers. The food slot was open, and Plaintiff reached through at a trustee. Defendants Hairston, Bowman, Starkey, Warman, and Rankin were talking to Plaintiff and occasionally laughing, and Plaintiff was talking back. The conversation appeared heated. Defendant Starkey tried to slam the slot closed, but Plaintiff's hand was holding it open. Defendant Bowman then sprayed mace on Plaintiff and the rest of the deputies jumped him, including Defendant Williams. The video showed Defendant Hairston beating on Plaintiff's right hand trying to get Plaintiff's hands out of the door slot. Once the big door was opened, Defendant Hairston started kneeing Plaintiff in the midsection to get Plaintiff down on the ground. Plaintiff's feet and hands were handcuffed, and he was moved to a different cell where the camera did not reach for a minute or two, and when all the deputies came out Plaintiff could see that

Defendant O'Brien reached for his taser and tased Plaintiff. The food slot was then closed, and the deputies left the area.

Plaintiff spoke with Sergeants Mazerik, Robbins, and Will, and Deputies Culbertson and Hoffman, who told him that he had been going through a withdrawal and that Defendants Hairston, Bowman, Starkey, Warman, Rankin, O'Brien, and Williams had no business bothering him because he was in a withdrawal tank. These individuals also stated that they would testify to this fact. However, when Plaintiff asked Defendant Mackin to subpoena them, he refused. Plaintiff wrote to Defendant Lasata about the issue, to no avail.

On March 7, 2023, Defendant Byrd dismissed the charge of assaulting a prison employee with regard to Defendant Bowman and amended the assault on Defendant Hairston to an R&O [resisting and obstructing a police officer]. Plaintiff was distraught because Defendant Hairston had never made a report or come to a court date, and Plaintiff had not been arraigned on that charge.

On the day of trial, Plaintiff told Defendant Lasata that Defendant Mackin had not come to see him in order to prepare for the trial. Defendant Lasata said that unfortunately they would nonetheless proceed with the trial. At his sentencing on May 22, 2023, Plaintiff expressed his disappointment that his lawyer, Defendant Mackin, had failed to subpoena his witnesses or to visit Plaintiff to prepare for his case. Defendant Lasata stated that he thought Defendant Mackin had done an excellent job and that if he had been a juror, he would have found Plaintiff guilty on everything. Defendant Mackin stated that he had attempted to get in touch with Deputy Culbertson to testify, but that Culbertson would not comply. Plaintiff later spoke to Deputy Culbertson, who said that Defendant Mackin had lied and that he would write a letter on Plaintiff's behalf.

Plaintiff states that he wrote letter grievances to Defendants Herbert, Bailey, and O'Brien about being assaulted and treated unfairly during his stay at the Berrien County Jail but received no response. Plaintiff also gave copies to Defendant Mackin to give to the Michigan State Police.

Plaintiff states that he is serving a three-year sentence for a charge that was brought on the date of the trial and had a hung jury on the original charge. Plaintiff contends that he never had a chance to prepare for trial on the new charge.

Plaintiff seeks to be examined by medical professionals for the damage that was done to his hand. Plaintiff also seeks to have the Defendants criminally charged and to be financially compensated for the cruel and unusual punishment he received which caused him pain and suffering.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      **A.**      **Defendant Lasata**

Plaintiff alleges that Defendant Lasata was the judge that handled his criminal case in state court. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12; *Bright v. Gallia Cnty.*,

753 F.3d 639, 649 (6th Cir. 2014) (recognizing the difference between an "excess of jurisdiction and the clear absence of all jurisdiction over the subject matter[,]" and noting that only the latter deprives a judge of judicial immunity).

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that making rulings during Plaintiff's pretrial proceedings as well as in his criminal trial was a judicial act and that Judge Lasata was acting within his jurisdiction in doing so. Accordingly, Judge Lasata is absolutely immune from liability. Because Judge Lasata is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915(e)(2)(B)(iii).

Moreover, injunctive relief is also not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, Plaintiff is not entitled to injunctive relief. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

B.     **Defendant Byrd**

Plaintiff sues Defendant Byrd because of her position as prosecutor in his criminal trial. Plaintiff alleges that Defendant Byrd dismissed the charge of assaulting a prison employee with regard to Defendant Bowman and amended the assault on Defendant Hairston to an R&O [resisting and obstructing a police officer]. Defendant Byrd is entitled to absolute immunity for her actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S.

9

219, 229 (1988); *accord Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021); *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Watkins*, 986 F.3d at 660-61; *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, making decisions regarding how to charge a criminal defendant is part of the prosecutor's role as an advocate. Accordingly, Defendant Byrd is entitled to immunity.

### C. Attorneys Page and Mackin

Plaintiff names his criminal defense attorneys as defendants. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a

sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly Treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff cannot show that his court-appointed attorney acted under color of state law. In *Polk Cty. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318–19 (footnotes omitted). This is true even of the state-appointed and state-paid public defender. *Id.* at 321. Once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. Even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Def.*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Ct. of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Accordingly, because Plaintiff's defense attorneys did not act under color of state law, no claim under § 1983 can be maintained against them.

### D. Claim that Plaintiff did not receive a fair trial

Plaintiff asserts that he was denied a fair trial on the charge of resisting and obstructing an officer because he did not have adequate notice of the charge and was not allowed to call the witnesses he requested. Plaintiff complains that he is currently serving a three-year sentence as a result. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Moreover, to the extent Plaintiff seeks injunctive, declaratory, and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck*, 512 U.S. at 486–87, which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a

12

conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations regarding the handling of his criminal proceedings clearly call into question the validity of his conviction and imprisonment. Therefore, those allegations would be barred under *Heck* until his criminal conviction has been invalidated.

### E.     Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### 1.   Conditions of confinement

Plaintiff alleges that following his arrest on August 17, 2022, he cannot clearly recall any events that occurred until September 2, 2022. As noted above, Plaintiff vaguely remembers asking for toilet tissue during that period so that he could wipe himself and recalls using his shirt to wipe. Plaintiff states that he was kept in receiving from August 17, 2022, until September 12, 2022, with only his boxers on, no mat, access to the shower, or toilet tissue. (ECF No. 1, PageID.5.)

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court notes that Plaintiff's conditions of confinement claim is unsupported by any specific factual allegations. Plaintiff states that he has only vague memories of the period in which he claims he was denied toilet paper, a shower, and a mat. Moreover, Plaintiff fails to allege facts indicating which, if any, Defendants were responsible for this denial. Therefore, Plaintiff's claim that his conditions of confinement violated the Eighth Amendment are properly dismissed.

    **2.    Excessive force**

Plaintiff also claims that he was subjected to excessive force in violation of the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes*, 452 U.S. at 345–46; *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of

confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff asserts that he was sent to "the hole" and arraigned on two counts of assault on a prison employee on September 14, 2022. Plaintiff states that he has no memory of the incident and pleaded not guilty. Plaintiff vaguely recalls getting tasered and maced but felt like it was a dream. Plaintiff asked some deputies about the incident, and they stated that Plaintiff must have been going through something because he was acting in a manner unusual for him. The deputies indicated that they would testify to that fact. Plaintiff later learned that he had also been maced by Defendants Magro, Khaul, and Rankin while he was apparently hallucinating or in withdrawal. (*Id.*)

On February 28, 2023, Plaintiff saw video of the assault for the first time. The video showed Plaintiff alone in a room wearing only his boxers. The food slot was open, and Plaintiff reached through at a trustee—one of the persons that Plaintiff believed was helping the police dispose of his family. Defendants Hairston, Bowman, Starkey, Warman, and Rankin were talking to Plaintiff and occasionally laughing, and Plaintiff was talking back. The conversation appeared heated. Defendant Starkey tried to slam the slot closed, but Plaintiff's hand was holding it open. Defendant Bowman then sprayed mace on Plaintiff and the rest of the deputies jumped him, including Defendant Williams. The video showed Defendant Hairston beating on Plaintiff's right hand trying to get Plaintiff's hands out of the door slot. Once the big door was opened, Defendant Hairston placed his knee on Plaintiff's midsection to get Plaintiff down on the ground. Plaintiff's feet and hands were handcuffed, and he was moved to a different cell where the camera did not reach for a minute or two, and when all the deputies came out Plaintiff could see that Defendant

16

O'Brien reached for his taser and tased Plaintiff. The food slot was then closed, and the deputies left the area. (*Id.* at PageID.6.)

Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently

serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Plaintiff alleges many facts that would support an argument that force was applied here in a good faith effort to restore order. Plaintiff acknowledges that he was not in his right mind. He admits he reached out to a trustee—a person he thought was disposing of the bodies of his family after they were killed by police. Plaintiff acknowledges he continued to hold onto the door despite the deputies' attempts to remove him. There appears to be no question of Plaintiff's resistance, resistance that required action by the deputies to restore order. Indeed, Plaintiff was specifically convicted of resisting Deputy Hairston, the defendant he accuses of the most violence against Plaintiff.[3] It may be that Plaintiff's conviction operates to preclude some or all of this claims regarding excessive force. The interplay between a resisting and obstructing violation under Mich. Comp. Laws § 750.81d, and a related excessive force claim under 42 U.S.C. § 1983, is not entirely clear. *See Sevenski v. Artfitch*, No. 21-1391/1402, 2022 WL 2826818, at *5 n.4 and *10 n.6 (6th Cir. Jul. 20, 2022) (where the Judges Stranch and White, in the majority, conclude a resisting and obstructing conviction under Mich. Comp. Laws § 750.81 does not foreclose an excessive force claim, and Judge Suhrheinrich, in a partial concurrence, argues the opposite position).

---

[3] (*See* Compl., ECF No. 1, PageID.6 (stating "Deputy Hairston beat[] on my right hand trying to get my hands off the slot door" and "Deputy Hairston then start[ed] kneeing me in my midsection to get my down on the ground").

On the other hand, Plaintiff's description of being handcuffed, left on the floor in a different cell, and then tasered for no apparent reason, would appear to be the sort of malicious and sadistic infliction of harm that rises to the level of an Eighth Amendment violation. Although Plaintiff has by no means proven his claim, at this stage of the proceedings, it is simply too early to resolve any uncertainty with regard to the propriety of the force employed. Accordingly, the Court will permit Plaintiff's Eighth Amendment claim to proceed against Defendants Magro, Khaul, Rankin, Hairston, Bowman, Starkey, Warman, Williams, and O'Brien—the defendants that Plaintiff claims actively participated in the incident on August 30, 2022.

### F.     Defendants Herbert and Bailey

The only allegation that Plaintiff makes against Defendants Herbert and Bailey is that Plaintiff wrote grievances regarding the August 30, 2022, incident, and Herbert and Bailey did not respond. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

19

has failed to allege that Defendants Herbert and Bailey engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Lasata, Byrd, Page, Mackin, Herbert, and Bailey. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claims relating to his conditions of confinement. Plaintiff's Eighth Amendment claims against Defendants Magro, Khaul, Rankin, Hairston, Bowman, Starkey, Warman, Williams, and O'Brien for the use of excessive force on August 30, 2022, remain in the case.

An order consistent with this opinion will be entered.

Dated: October 26, 2023              /s/ Ray Kent
                                     Ray Kent
                                     United States Magistrate Judge